USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___09/30/2020___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGEL VALVERDE,

                Plaintiff,

            -against-

J.D. FOLKS, Correction Officer at Sing Sing Correctional
Facility; T.A. CUNNINGHAM, Correction Officer at Sing Sing
Correctional Facility; L. BROWN, Correction Officer at Sing
Sing Correctional Facility; "JOHN" GONZALEZ, Sergeant at
Sing Sing Correctional Facility; "JANE" FRANGELLA,
Registered Nurse at Sing Sing Correctional Facility; "JOHN"
ORICCO, Lieutenant at Sing Sing Correctional Facility;
"JOHN" MAYES, Hearing Officer at Downstate Correctional
Facility; ROBERT MORTON, Superintendent of Downstate
Correctional Facility; MICHAEL CAPRA, Superintendent of
Sing Sing Correctional Facility; JOHN DOES (1-10),
Correction Officers at Sing Sing Correctional Facility,

                Defendants.

1:19-cv-08080-MKV

OPINION AND ORDER
GRANTING MOTION TO
DISMISS

MARY KAY VYSKOCIL, United States District Judge:

       Plaintiff Angel Valverde ("Plaintiff") brings this action under 42 U.S.C. § 1983 against

several correctional officers and the superintendents of Sing Sing Correctional Facility ("Sing Sing

CF") and Downstate Correctional Facility ("Downstate CF"), alleging, *inter alia*, excessive use of

force.  (Third Am. Compl. ("TAC") [ECF No. 70].)  Before the Court is a Motion to Dismiss

Plaintiff's Third Amended Complaint as against Defendant Michael Capra, Superintendent of Sing

Sing CF ("Capra"), and Robert Morton, Superintendent of Downstate CF ("Morton").  (Mot.

Dismiss TAC [ECF No. 74].)   For the reasons discussed below, the Motion by Defendants Capra

and Morton is GRANTED.

# BACKGROUND

## A. Factual Background[1]

On August 29, 2020, at approximately 12:00 PM, Plaintiff, an inmate at Sing Sing CF, was called to meet with Sergeant Ruane to discuss a letter concerning incidents involving correctional officers that Plaintiff had sent to New York Governor Andrew Cuomo, the Office of the New York Inspector General, the Office of Special Investigations, and Captain Carrington of Sing Sing CF. (TAC ¶¶ 2, 21.)  Later that day at approximately 8:00 PM, Correctional Officer ("C.O.") Algarin unlocked Plaintiff's cell and Plaintiff stepped into the hallway.  (TAC ¶¶ 22–24.)  C.O. Algarin then pointed a finger in Plaintiff's face and accused Plaintiff of "giving [his] officers a hard time." (TAC ¶ 25.)  Plaintiff expressed his desire to return to his cell.  (TAC ¶ 26.)  C.O. Algarin then pushed Plaintiff in the chest and punched him in the face.  (TAC ¶ 27.)  Plaintiff attempted to hold down C.O. Algarin's arms to prevent additional punches.  (TAC ¶ 28.)  C.O. Folks ran from down the hall and began striking Plaintiff in the back with a baton.  (TAC ¶ 29.)  C.O. Folks eventually stopped and allowed Plaintiff to return to his cell.  (TAC ¶ 31.)  Minutes later, a group of officers approached the cell, handcuffed Plaintiff, and escorted him downstairs to the medical clinic.  (TAC ¶¶ 32–35.)  On the way there, Sergeant Gonzalez struck Plaintiff in the face several times, causing Plaintiff's dentures to fall out.  (TAC ¶ 34.)

Once in the medical clinic, Sergeant Gonzalez smacked Plaintiff and taunted him.  (TAC ¶ 35.)  Eight to twelve other officers then entered the room and brutally assaulted Plaintiff for approximately twenty minutes.  (TAC ¶¶ 39, 42.)  During the assault, the officers shouted, "who's soft now" and "tell him to keep writing Albany!"  (TAC ¶ 43.)  At one point, one officer opened

---

[1] The following facts are recited as alleged by Plaintiff in the Third Amended Complaint. (TAC [ECF No. 70].) The Court is "constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).

Plaintiff's legs, stomped on his genitals, and told him that he would not be able to have children. (TAC ¶ 44.)

Nurse Frangella examined Plaintiff after the assault.  (TAC ¶ 50.)  Plaintiff was in severe pain, his eye was swollen shut, and he had one broken tooth and one cracked tooth.  (TAC ¶¶ 51–53.)   Plaintiff then spoke with a doctor via videoconference.   (TAC ¶ 54.)   The doctor recommended that Plaintiff be taken to a hospital.  (TAC ¶ 57.)  Plaintiff was brought to Putnam Hospital sometime between 2:00 AM and 2:30 AM on the morning of August 30, 2018.  (TAC ¶¶ 59–61.)

After receiving treatment at Putnam Hospital, Plaintiff was transferred to Downstate CF. (TAC ¶ 63.)  Before Plaintiff left for Downstate CF, an officer gave him a urine-drenched jumpsuit to wear during transport.  (TAC ¶ 71.)

After the incident, correctional officers filed reports against Plaintiff accusing him of disciplinary infractions, including assault on staff, threats, violent conduct, creating a disturbance, and refusing a direct order.  (TAC ¶ 78.)  Officials tried Plaintiff at a disciplinary hearing, though Plaintiff was not provided documents, photos, or video footage to prepare a defense.  (TAC ¶¶ 80, 83.)  In addition, officials denied Plaintiff's requests for witnesses to testify on his behalf.  (TAC ¶ 81.)  Officials found Plaintiff guilty of creating a disturbance and refusing a direct order and sentenced him to 180 days of solitary confinement in the Secured Housing Unit.  (TAC ¶ 83.) Plaintiff filed a formal grievance complaining of the assault, threats, and harassment by correctional officers at Sing Sing CF.   (TAC ¶ 84.)   Morton and the Central Office Review Committee denied Plaintiff's grievance.  (TAC ¶ 85.)

B. **Procedural Background**

On August 29, 2019, Plaintiff filed his initial Complaint alleging four causes of action: (1) excessive force against all defendant officers; (2) deliberate indifference against Capra; (3) procedural due process violations against Morton and one other defendant; and (4) failure to intervene against all individual defendants.  (Compl. ¶¶ 77–97 [ECF No. 2].)  On October 24, 2019, Plaintiff filed his First Amended Complaint (First Am. Compl. [ECF No. 50]) to correct the spelling of a defendant's name (*see* Mot. Leave File Am. Compl. 1 [ECF No. 46]).  On November 7, 2019, the Court (McMahon, *C.J.*) entered a Civil Case Management Plan setting various deadlines.  (Civil Case Mgmt. Plan [ECF No. 54].)  On November 14, 2019, Plaintiff filed his Second Amended Complaint, alleging the same four causes of actions in his Complaint and First Amended Complaint.  (*See* Second Am. Compl. ¶¶ 78–98 [ECF No. 57].)

On December 16, 2019, Defendants Capra and Morton moved to dismiss the Second Amended Complaint on the grounds that, *inter alia*, the allegations did not support the claims against them.  (Mot. Dismiss Second Am. Compl. 1 [ECF No. 64].)  The other Defendants filed their Answer that same day.  (Answer Am. Compl. [ECF No. 66].)

On December 30, 2019, Plaintiff filed his Third Amended Complaint.  (TAC.)  The Third Amended Complaint alleges four causes of action.  (*See* TAC ¶¶ 87–110.)  Counts II, III, and IV are relevant to this Motion.   Count II alleges deliberate indifference under the Eighth Amendment—specifically, that Capra, *inter alia*, "was reckless, callous, grossly negligent, and deliberately indifferent to Mr. Valverde's safety and well-being in exercising his supervisory responsibilities, including but not limited to the provisions of adequate staffing, hiring, training, retention, supervision, management, and control over correctional staff assigned to Sing Sing CF." (TAC ¶ 94.)  Count III alleges a procedural due process violation against Morton for reviewing the

charges filed against Plaintiff and the results of Plaintiff's disciplinary hearing and declining to alter Plaintiff's sentence of solitary confinement.   (TAC ¶ 103.)   Count IV alleges failure to intervene against Capra, but alleges no specific facts concerning Capra under the cause of action. (*See* TAC ¶¶ 105–110.)   Specific factual allegations concerning Capra and Morton that were not alleged in Plaintiff's first three complaints are scattered throughout the Third Amended Complaint. (*See generally* TAC.)

This case was reassigned to me on February 5, 2020.  Defendants Capra and Morton moved to dismiss the Third Amended Complaint shortly thereafter.   (Mot. Dismiss TAC.)   The other Defendants do not challenge the sufficiency of the Third Amended Complaint.  They filed Answers to the Third Amended Complaint on February 19, 2019 (Answer Am. Compl. [ECF No. 76]), and March 2, 2019 (Answer Am. Compl. [ECF No. 79]).

### C.  <u>The Present Motion</u>

In their Motion to Dismiss, Defendants Capra and Morton argue that the Third Amended Complaint fails to allege sufficient personal involvement by them in the alleged constitutional violations and that they are both entitled to qualified immunity.  As to Capra, Defendants argue that the allegations in the Third Amended Complaint lack specific factual detail connecting Capra to the assault on Plaintiff and assume Capra's involvement solely based on his position as Superintendent of Sing Sing CF.   (Mem. Supp. Mot. Dismiss ("Defs.' Br.") 4–9 [ECF No. 75].) As to Morton, Defendants argue that Morton's denial of Plaintiff's grievance and his affirmance of the outcome of Plaintiff's disciplinary hearing or penalty are insufficient to establish personal involvement.   (Defs.' Br. 9–10.)   In addition, Capra and Morton argue that they are entitled to qualified immunity.  (Defs.' Br. 10–12.)

Plaintiff responds that the Third Amended Complaint alleges facts sufficient to establish personal involvement by Capra and Morgan in the alleged constitutional violations.  (Mem. Opp. Mot. Dismiss ("Pl.'s Br.") 6 [ECF No. 87].)  Plaintiff argues, as alleged in the Third Amended Complaint, that Capra and Morton were personally involved in Plaintiff's transfer from Sing Sing CF to Downstate CF by virtue of New York Correction Law § 23.  Plaintiff also argues that Morton's denial of Plaintiff's grievance establishes Morton's failure to remedy the situation.  (Pl.'s Br. 7.)  In response to Defendants' arguments with respect to qualified immunity, Plaintiff summarizes caselaw on qualified immunity, but fails to argue how it applies in this case to defeat immunity.  (*See* Pl.'s Br. 8–10.)  Finally, Plaintiff requests leave to file a fourth amended complaint should the Court dismiss the claims challenged in the Motion.

## LEGAL STANDARD

### A.  Motion To Dismiss Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  While a sufficiently pleaded complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks, alterations, and citations omitted); *see also Iqbal*, 556 U.S. at 678 (noting that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)).

In ruling on a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). The Court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citing *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007); and *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). The Court's role at this stage is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

### B. <u>Section 1983</u>

Section 1983 provides, in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To state a claim under Section 1983, a plaintiff must plausibly allege "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and

(2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### C. <u>Supervisory Liability</u>

To establish a defendant's individual lability under Section 1983, a plaintiff must demonstrate the defendant's "personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). A defendant in a supervisory position cannot be held liable under Section 1983 under a theory of *respondeat superior*. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). Thus, "a defendant cannot be held liable merely because he occupied a supervisory position." *Randle v. Alexander*, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013) (quoting *Harrison v. Goord*, No. 07 Civ. 1806 (HB), 2009 WL 1605770, at *9 (S.D.N.Y. June 9, 2009)); *see also Walker v. Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *15 (S.D.N.Y. Mar. 26, 2013) ("A defendant's status as warden or commissioner of a prison, standing alone, is . . . insufficient to support a finding of supervisory liability."). Accordingly, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Mere "linkage in the prison chain of command" will not suffice. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)).

Personal involvement of a supervisory defendant may be established through evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates

by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  The Second Circuit has acknowledged that the Supreme Court's subsequent decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations."  *Grullon*, 720 F.3d at 139.  That is because *Iqbal* "explicitly rejected the argument that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.'"  *Reynolds v. Barrett*, 685 U.S. 193, 205 n.14 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677).[2]

---

[2] The Second Circuit, on several occasions, has declined to address the effect of *Iqbal* on *Colon*. *See Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test, including the gross negligence prong, after *Iqbal*."); *Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which" *Iqbal* may have affected *Colon*); *Grullon*, 720 F.3d at 139 ("[W]e need not reach *Iqbal*'s impact on *Colon* in this case . . . ."); *Reynolds*, 685 F.3d at 205 n.14 ("But the fate of *Colon* is not properly before us . . . ."). District courts in this circuit are divided on the question. Some have concluded that only the first and third *Colon* categories survive *Iqbal*. *See, e.g.*, *Butler v. Suffolk County*, 289 F.R.D. 80, 94 n.8 (E.D.N.Y. 2013) (Seybert, *J.*) (concluding that "only two of the *Colon*-factors—direct participation and the creation of a policy or custom—survive *Iqbal*" (collecting cases)); *Firestone v. Berrios*, 42 F. Supp. 3d 403, 415 (E.D.N.Y. 2013) (Spatt, *J.*) (finding that *Iqbal* effectively nullified several of the classifications of supervisory liability enunciated by the Second Circuit in *Colon* (citations omitted)); *Doe v. New York*, No. 10 CV 1792(RJD)(VVP), 2012 WL 4503409, at *8 n.3 (E.D.N.Y. Sept. 28, 2012) (Dearie, *J.*) (finding it "clear" that only the first and third *Colon* categories survive *Iqbal* (citations omitted)); *Vann v. Fischer*, No. 11 Civ. 1958 JPO, 2012 WL 2384428, at *5 n.9 (S.D.N.Y. June 21, 2012) (Oetken, *J.*) (finding that all scenarios in which personal involvement might be found except the first and third listed in *Colon* "have been invalidated by the Supreme Court's holding in *Iqbal*" (citations omitted)); *Warrender v. United States*, No. 09–CV–2697 (KAM)(LB), 2011 WL 703927, at *5 n.1 (E.D.N.Y. Feb. 17, 2011) (Matsumoto, *J.*) (finding that "most of the *Colon* categories have been superseded by *Iqbal*" (citation omitted)); *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (Scheindlin, *J.*) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated— situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."), *aff'd*, 387 F. App'x 55 (2d Cir. 2010) (summary order). Others have concluded that all five *Colon* categories still can be a basis for establishing liability of supervisory defendants. *See, e.g.*, *Phillip v. Schriro*, No. 12–CV–8349, 2014 WL 4184816, at *4 (S.D.N.Y. Aug. 22, 2014) (Abrams, *J.*) (finding that "*Colon* remains good law" (collecting cases)); *Turkmen v. Ashcroft*, 915 F. Supp. 2d 314, 336 (E.D.N.Y. 2013) (Gleeson, *J.*) ("What is different after *Iqbal* is that the guiding question is no longer simply whether a plaintiff has pleaded personal involvement under *Colon* but whether a plaintiff has pleaded each of the elements of the constitutional tort alleged."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (Rakoff, *J.*) ("[T]he five *Colon* categories for personal liability of supervisors may still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated." (citation omitted)); *see also Marmon v. City of New York*, No. 15-cv-2017 (PKC), 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2015) (Castel, *J.*) ("The holding in *Iqbal* does not stand for the proposition that a supervisor can never be found personally liable for a constitutional deprivation on a showing that he was 'grossly

Amid this uncertainty, many district courts in this circuit seem to take one of two approaches.  First, some courts have concluded that where "the constitutional claim does not require a showing of discriminatory intent . . . the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."  *Toliver v. N.Y.C. Dep't of Corr.*, Nos. 10 Civ. 822(RJS)(JCF), 5355(RJS)(JCF), 2013 WL 3779125, at *8 (S.D.N.Y. July 8, 2013) (Sullivan, *J.*) (collecting cases) (adopting report and recommendation); *see also Delgado v. Bezio*, No. 09 Civ. 6899(LTS), 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (Swain, *J.*) (finding that "where the claim does not require a showing of discriminatory intent, the *Colon* analysis should still apply").  A second approach is to first analyze the claim under the less exacting *Colon* standard, and if that less stringent standard is not met, there is no need to address the stricter *Iqbal* standard.  *See, e.g.*, *McNair v. Ponte*, 16-CV-1722 (LAP), 2019 WL 1428349, at *8 (S.D.N.Y. Mar. 29, 2019) (Preska, *J.*); *Samuels v. Fischer*, 168 F. Supp. 3d 625, 635–36 (S.D.N.Y. 2016) (Karas, *J.*); *Golodner v. City of New London*, No. 3:14–cv–00173–VLB, 2015 WL 1471770, at *7 (D. Conn. Mar. 31, 2015) (Bryant, *J.*).

In this case, the Court need not choose a side in this ongoing debate because, as discussed below, Plaintiff's claims fail under any interpretation of *Colon* and *Iqbal*.

### D. **Qualified Immunity**

"The doctrine of qualified immunity shields [public] officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Mullenix v. Luna*, -- U.S. ---, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  A claim of qualified immunity raises

---

negligent' or 'deliberately indifferent.'"); *Zappulla v. Fischer*, No. 11 Civ. 6733(JMF), 2013 WL 1387033, at *9 (S.D.N.Y Apr. 5, 2013) (Furman, *J.*) ("*Iqbal* should not be read to invalidate the *Colon* categories altogether.").

three issues: "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133–34 (2d Cir. 2010)).

A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 136 S. Ct. at 308 (quoting *Reich v. Howards*, 566 U.S. 658, 664 (2012)). Qualified immunity "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Qualified immunity is not only a defense but "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (collecting cases). Although qualified immunity is an affirmative defense, and an affirmative defense is normally asserted in an answer, the defense may be asserted in an 12(b)(6) motion where "the facts supporting the defense appear[] on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74–75 (2d Cir. 1998)). In asserting the qualified immunity defense at the pleading stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* at 436.

## DISCUSSION

### A. **Defendant Capra**

Plaintiff brings an Eighth Amendment claim against Capra under two theories of liability: (1) failure to train (Count II) and (2) failure to intervene (Count IV).  First, Plaintiff alleges that Capra was deliberately indifferent to Plaintiff's safety and well-being with respect to staffing, training, and supervising correctional staff and failing to establish appropriate procedures for responding to alleged incidents of misconduct by staff.  (TAC ¶¶ 94–95.)  Second, Plaintiff alleges that Capra "used his position to conceal the coordinated effort of several correctional officers, including medical staff, to retaliate and assault Mr. Valverde."  (TAC ¶ 96.)  Specifically, Plaintiff alleges that Capra was personally involved in the transfer of Plaintiff from Sing Sing CF to Downstate CF "by virtue of the provisions of New York Correction Law § 23."[3]  (TAC ¶¶ 62–63.)  Plaintiff alleges that Capra orchestrated the transfer "to conceal the brutality inflicted upon Mr. Valverde," "to prevent Mr. Valverde from identifying the correction officers who brutalized him," "to prevent Mr. Valverde from contacting witnesses who offered their assistance after witnessing Mr. Valverde's assault," and "to prevent or delay Mr. Valverde's family from visiting Mr. Valverde with visible bruises on his face and body."  (TAC ¶¶ 65–68.)  Finally, Plaintiff claims that Capra "knew of Mr. Valverde's grievances about the August 29, 2019 assault," "knew of the false charges

---

[3] This statute provides, in relevant part:

> The commissioner shall have the power to transfer inmates from one correctional facility to another. Whenever the transfer of inmates from one correctional facility to another shall be ordered by the commissioner, the superintendent of the facility from which the inmates are transferred shall take immediate steps to make the transfer. . . . The commissioner, in his or her discretion, may by written order permit inmates to receive medical diagnosis and treatment in outside hospitals, upon the recommendation of the superintendent or director that such outside treatment or diagnosis is necessary by reason of inadequate facilities within the institution. Such inmates shall remain under the jurisdiction and in the custody of the department while in said outside hospital and said superintendent or director shall enforce proper measures in each case to safely maintain such jurisdiction and custody.

N.Y. Correct. Law § 23(a)–(b).

lodged against Mr. Valverde," and "knew the disciplinary hearing regarding these charges yielded a term of solitary confinement" but failed to remedy the alleged constitutional violation.  (TAC ¶¶ 97–98.)

Plaintiff's claim for failure to train (Count II) implicates the fourth *Colon* category—that is, the defendant supervisor was negligent in supervising subordinates who perpetrated unconstitutional acts.  *Colon*, 58 F.3d at 873.  To establish a supervisory official's personal involvement on this basis, a plaintiff must allege that the defendant "knew or should have known that there was a high degree of risk that [his subordinates] would behave inappropriately . . . during [their] assignment, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury."  *Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir. 2002) (citations omitted).

Plaintiff's claim for failure to intervene (Count IV) implicates the fifth *Colon* category—that is, the defendant supervisor failed to remedy a known constitutional violation.  *Colon*, 58 F.3d at 873.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)); *see also McRae v. Gentile*, 9:14–CV–00783 (GLS/TWD), 2015 WL 7292875, at *2 (N.D.N.Y. Oct. 20, 2015) ("Law enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." (citing *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); and *Anderson*, 17 F.3d at 557)).  An officer can be liable for failure to intervene when

"(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988); and *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 395 (S.D.N.Y. 2005)).  Importantly, liability will attach only if the official "observes excessive force is being used or has reason to know that it will be." *Curley*, 268 F.3d at 72 (citing *Anderson*, 17 F.3d at 557); *see also Fredricks v. City of New York*, No. 12 Civ. 3734(AT), 2014 WL 3875181, at *12 (S.D.N.Y. July 23, 2014) ("[A]n officer who fails to intervene may be liable for preventable harm caused by the actions of other officers only if he or she observes or has reason to know that those officers violated someone's constitutional rights." (citing *Anderson*, 17 F.3d at 557)).  In addition, "there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Rahman v. Acevedo*, No. 08 Civ. 4368(DLC), 2011 WL 6028212, at *8 (S.D.N.Y. Dec. 5, 2011).

Plaintiff has failed to plead personal involvement by Capra with respect to the claim for failure to train because Plaintiff does not allege that Capra knew or had reason to know there was a risk of misconduct by the correctional officers and that Capra deliberately disregarded that risk. *See Poe*, 282 F.3d at 142.  Specifically, Plaintiff has not alleged that Capra "had direct responsibility for monitoring the alleged violation or that there had been a 'history of previous episodes' putting the [Capra] on notice of the problem." *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) (quoting *Candelaria v. Coughlin*, No. 91 Civ. 1117, 1991 WL 113711, at *2 (S.D.N.Y. June 11, 1991)).  While Plaintiff alleges that, before the alleged assault, he had sent a letter regarding prior incidents involving correctional officers to Governor Cuomo, the Office of the Inspector General, the Office of Special Investigations, and Captain

Carrington (TAC ¶ 21), the Third Amended Complaint is devoid of any allegation that Plaintiff had sent that letter to Capra or that Capra otherwise was aware of the letter or the incidents alleged therein.

With respect to Plaintiff's claim for failure to train, the Third Amended Complaint is composed of nothing more than conclusory allegations and is devoid of any facts showing that Capra consciously disregarded a high risk that the correctional officers under his command would misbehave.  There is no alleged factual connection between the purported failure to train and the alleged incident that led to Plaintiff's injuries.  The Third Amended Complaint therefore does not establish personal involvement under *Colon*, let alone under *Iqbal*.  *See A.K. v. Annucci*, 17 CV 769 (VB), 2018 WL 4372673, at *7 (S.D.N.Y. Sept. 13, 2018) (dismissing claim against correctional facility supervisor where plaintiff's allegations were "generalized, conclusory, and fail[ed] plausibly to suggest he was personally involved in the relevant acts and decisions"); *Samuels*, 168 F. Supp. 3d at 639 (dismissing claim that supervisors at Sing Sing CF failed to adequately train or supervise subordinates because plaintiff failed to allege "some factual connection between their failure to train and the harm that eventually befell Plaintiff" (collecting cases)); *Scaccia v. County of Onondaga*, No. 5:07-CV-0207 (GTS/GJD), 2009 WL 4985683, at *11 (N.D.N.Y. Dec. 15, 2009) (granting motion to dismiss as to supervisory officials because plaintiff alleged "no facts plausibly suggesting how Defendants . . . failed to train and/or supervise their subordinates").  In short, Plaintiff has failed to plead personal involvement by Capra on this claim because Plaintiff "does not allege any facts from which the Court could reasonably infer that [Capra] participated in this alleged mistreatment, w[as] present when it allegedly occurred, knew about it, or w[as] grossly negligent in any way."  *McNair*, 2019 WL 1428349, at *10 (quoting *McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 700 (S.D.N.Y. 1999)).

Plaintiff has also failed to plead personal involvement by Capra with respect to his claim for failure to intervene.  The Third Amended Complaint "lacks any allegation that [Capra] failed to intervene in [the assault] by failing to remedy a known wrong or 'exhibit[ing] deliberate indifference' to Plaintiff's rights 'by failing to act on information indicating that unconstitutional acts were occurring.'"  *Laporte v. Keyser*, No. 14-CV-8293 (KMK), 2018 WL 794621, at *7 (S.D.N.Y. Feb. 8, 2018) (quoting *Grullon*, 720 F.3d at 139).  Specifically, Plaintiff has not alleged that Capra had actual knowledge of the alleged assault by the correctional officers such that Capra could have intervened to prevent it.  *See Sash v. United States*, 674 F. Supp. 2d 531, 544–45 (S.D.N.Y. 2009) (finding no personal involvement where plaintiff "present[ed] no evidence that [the supervisory defendant] was present at the scene, was aware [his subordinates] were going to use excessive force, or that [the supervisory defendant] had 'a realistic opportunity to intervene to prevent the harm from occurring'" (quoting *Anderson*, 17 F.3d at 557)); *see also Caravalho v. City of New York*, 13-cv-4174 (PKC)(MHD), 2016 WL 1274575, at *19 (S.D.N.Y. Mar. 31, 2016) (finding no personal involvement and dismissing claim for failure to intervene as a matter of law because plaintiffs did not "present facts showing that any of the named defendants directly participated in, or were in a position to effectively intercede in, the alleged uses of force"); *cf. Shepherd v. Fischer*, No. 9:10–CV–1524 (TJM/DEP), 2015 WL 1246049, at *15 (N.D.N.Y. Feb. 23, 2015) (finding personal involvement by supervisory officer who "witnessed the incident and 'did nothing to intervene or refrain his officers from assaulting [plaintiff]'").

Under a claim for failure to intervene, "liability may attach when a supervisor fails to act on reports of a staff member's previous assaults on the plaintiff and the plaintiff is assaulted again by that same staff member."  *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 255 (2d Cir. 2001)).  Here, Plaintiff

alleges that he complained of a prior incident involving C.O. Santiago in the letter he sent to Governor Cuomo, the Office of the Inspector General, the Office of Special Investigations, and Captain Carrington (TAC ¶ 21) and that C.O. Santiago was one of the officers who participated in the assault giving rise to his present claims (TAC ¶ 39). But, as noted above, Plaintiff does not allege that Capra knew of this letter or the incident involving C.O. Santiago alleged therein— which is described simply as "an incident," providing no detail about what allegedly occurred on that occasion. (TAC ¶ 21.) Plaintiff has not alleged that Capra was aware of any assaults by the officers named in this action on Plaintiff—or any other inmates—such that the Court could infer that Capra failed to intervene and prevent the alleged assault from which this action arises. *See McNair*, 2019 WL 1428349, at *10 (finding no personal involvement by supervisory officials where plaintiff did not allege that the subordinates "had a history of using chemical agents or denying medical care, such that the Court could reasonably infer the Supervisory Defendants knew a chemical agent may be used against [plaintiff] or that he may be denied medical care" (citations omitted)).

Insofar as Plaintiff alleges that the transfer of Plaintiff from Sing Sing CF to Downstate CF was an attempt by Capra to cover up the alleged assault, these allegations, aside from being totally conclusory and speculative, do not suggest with any plausibility that Capra knew or had reason to know of a violation of Plaintiff's constitutional rights and that Capra had an opportunity to intervene *before* the assault occurred. First, Plaintiff's claim that Capra was personally involved in the transfer "by virtue of the provisions of New York Correction Law § 23" is simply an attempt to hold Capra liable based solely on his status as superintendent, which cannot establish personal involvement. *See Walker*, 2013 WL 1234930, at *15; *see also Colon*, 58 F.3d at 874 ("The bare fact that [defendant] occupies a high position in the New York prison hierarchy is insufficient to

sustain [plaintiff's] claim." (citations omitted)).   Moreover, even assuming that Capra was personally involved in Plaintiff's transfer, the most the Court could infer from the transfer is that, upon learning of the alleged assault, Capra *did in fact intervene*—Capra transferred Plaintiff out of Sing Sing CF to remove him from harm's way to prevent further constitutional violations.

In sum, Plaintiff has failed to plead facts sufficient to establish an Eighth Amendment violation by Capra.  With respect to both claims, Plaintiff's Third Amended Complaint is composed of nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  As the Second Circuit has long made clear, "even within the context of the *Colon* framework, 'merely recit[ing] the legal elements of a successful § 1983 claim for supervisory liability . . . does not meet the plausibility pleading standard.'" *Samuels*, 168 F. Supp. 3d at 637–38 (ellipsis and alteration in original) (quoting *Dotson v. Farrugia*, No. 11–CV–1126, 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012)).  Because Plaintiff cannot satisfy the less stringent *Colon* standard, the Court need not consider the effects of *Iqbal* on Plaintiff's claims.  *See McNair*, 2019 WL 1428349, at *8; *Samuels*, 168 F. Supp. 3d at 635–36; *Golodner*, 2015 WL 1471770, at *7. Accordingly, Plaintiff's claims against Capra are dismissed due to lack of personal involvement.

## B. <u>Defendant Morton</u>

Plaintiff alleges in Count III a Fourteenth Amendment procedural due process violation by Morton.  Specifically, Plaintiff alleges that Morton affirmed the results of Plaintiff's disciplinary hearing and his sentence of 180 days of solitary confinement.  (TAC ¶ 103.)  Plaintiff also alleges that Morton denied Plaintiff's grievance in which Plaintiff complained of the alleged assault as well as threats and harassment by officers at Sing Sing CF.  (TAC ¶¶ 84–85.)  Plaintiff alleges that, in denying the grievance, Morton "ignored factual inconsistencies in reports authored by the

officers and oral testimony from officers and medical staff." (TAC ¶ 86.) A claim regarding the denial of a grievance is normally pleaded as an Eighth Amendment deliberate indifference claim. *See generally Hyatt v. Rock*, Civ. No. 9:15-CV-89 (DNH/DJS), 2018 WL 1470619 (N.D.N.Y. Feb. 16, 2018). Although the Third Amended Complaint lists Morton only under the procedural due process cause of action and not the deliberate indifference cause of action, the Court construes Plaintiff's Third Amended Complaint as asserting a deliberate indifference claim against Morton given the apparent intent of Plaintiff to assert a claim for the denial of his grievance. (*See* TAC ¶¶ 85–86.)[4]

### 1. *Affirmance of Plaintiff's Disciplinary Hearing*

Plaintiff's claim in Count III based on Morton's affirmance of the results of his disciplinary hearing falls squarely within the second *Colon* category—the supervisory defendant, after learning of a constitutional violation through a report or appeal, failed to remedy the wrong. *Colon* 58 F.3d at 873. Courts in this circuit "are split over whether an allegation that a defendant affirmed a disciplinary proceeding is sufficient to establish personal liability for supervisory officials." *Samuels*, 168 F. Supp. 3d at 643 (ellipsis and alteration omitted) (quoting *Scott v. Frederick*, No. 13–CV–605, 2015 WL 127864, at *17 (N.D.N.Y. Jan. 8, 2015)). For example, some courts apply an "affirmance plus standard, which holds that the mere rubber-stamping of a disciplinary determination is insufficient to plausibly allege personal involvement." *Hinton v. Prack*, No. 12–CV–1844, 2014 WL 4627120, at *17 (N.D.N.Y. Sept. 11, 2014) (citing *Brown v. Brun*, 2010 WL

---

[4] Plaintiff makes similar factual allegations against Morton as he does against Capra: that Morton knew that Plaintiff sustained serious injuries requiring outside medical attention; that Morton was personally involved in the transfer of Plaintiff from Sing Sing CF to Downstate CF by operation of New York Correction Law § 23; and that Morton facilitated the transfer of Plaintiff to conceal the correctional officers' attack, prevent Plaintiff from identifying the officers and contacting witnesses, and delay any visits by Plaintiff's family. (TAC ¶¶ 64–68.) Plaintiff, however, fails to connect these factual allegations to his procedural due process claim. Furthermore, even if Plaintiff brought a claim of deliberate indifference against Morton based on these allegations, as he does against Capra, Plaintiff fails to establish personal involvement of Morton for the same reasons discussed above with respect to Capra.

5072125, at *2 (W.D.N.Y. Dec. 7, 2010)).  Conversely, other courts conclude that the affirmance of a prison disciplinary determination, standing alone, is sufficient to find personal liability.  *See, e.g.*, *Murray v. Arquitt*, No. 10–CV–1440, 2014 WL 4676569, at *12 (N.D.N.Y. Sept. 18, 2014) (citing *Thomas v. Calero*, 824 F. Supp. 2d 488, 505–11 (S.D.N.Y. 2011)).

The Court is reluctant to embrace the reasoning behind those cases holding that a supervisory official's affirmance of a disciplinary hearing cannot be sufficient personal involvement for liability to attach.  As one court has explained, "on a simple conceptual level, it is difficult to imagine how a prison official could be deemed uninvolved where that official considered the inmate's objections and had the power to abrogate or preserve punishment, that, allegedly, was improperly imposed."  *Samuels*, 168 F. Supp. 3d at 634 (citing *Tolliver v. Lilley*, No. 12–CV–971, 2014 WL 10447163, at *12 (S.D.N.Y. Oct. 24, 2014)).  Indeed, it would be hard to reconcile how a disciplinary hearing officer can be sued for violating an inmate's procedural due process rights, yet "the appeal officer, who has access to the same information as the hearing officer and is empowered to correct errors of the hearing officer, should not be held to the same standards of liability."  *Lebron v. Mrzyglod*, No. 14-CV-10290 (KMK), 2017 WL 365493, at *9 (S.D.N.Y. Jan. 24, 2017) (citing *Ortiz v. McBride*, 380 F.3d 649, 654–55 (2d Cir. 2004)).  In addition, a conclusion that the affirmance of a disciplinary hearing is sufficient personal involvement by a supervisory official based on the facts of a particular case does not conflict with *Iqbal*, "the relevant teaching of which was that 'each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'"  *Samuels*, 168 F. Supp. 3d at 644 (quoting *Iqbal*, 556 U.S. at 677).

In any event, while it finds persuasive the reasoning behind the cases finding personal involvement in the affirmance of a disciplinary hearing, the Court need not decide affirmatively

whether Morton's affirmance is sufficient personal involvement for liability to attach under Section 1983 because Morton is entitled to qualified immunity on this claim.  *See Colon v. Annucci*, 344 F. Supp. 3d 612, 632 (S.D.N.Y. 2018) (noting that "the Court has discretion to consider the applicability of a qualified immunity defense before determining whether Plaintiff has stated a claim" (citing *Pearson*, 555 U.S. at 236)).  Here, the split among district courts in this circuit makes clear that the law on this issue is not clearly established or "beyond debate."  *al-Kidd*, 563 U.S. at 741.  Therefore, "it cannot be said that 'every reasonable official,' would have known that failure to correct a procedural due process error on appeal violates an inmate's constitutional rights." *Lebron*, 2017 WL 365493, at *9 (quoting *Reich v. Howards*, 566 U.S. 658, 664 (2012)); *see also Colon*, 344 F. Supp. 3d at 631 (granting qualified immunity because "Plaintiff allege[d] no facts showing that [Defendant] knew or reasonably should have known that [affirming Plaintiff's disciplinary disposition] violated Plaintiff's due process rights, and the law is not so clear that a reasonable appeal officer would have known that" (citations omitted)); *Richardson v. Williams*, No. 15-CV-4117, 2016 WL 5818608, at *3 (S.D.N.Y. Oct. 5, 2016) (ellipsis and alteration in original) (concluding that when the defendant "denied plaintiff's appeal, it was not 'clearly established . . . whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted'" (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009)).  Accordingly, Morton is entitled to qualified immunity with respect to the affirmance of Plaintiff's disciplinary hearing, and therefore, this claim is dismissed.

2.  *Denial of Plaintiff's Grievance*

Plaintiff's claim based on allegations that Morton denied his grievance also implicates the second *Colon* category—the supervisory defendant failed to remedy a violation after learning

about it through a report or letter.  *Colon* 58 F.3d at 873; *see Santos v. Geer*, 9:20-CV-0421 (LEK/DJS), 2020 WL 5525177, at *4 (N.D.N.Y. Sept. 15, 2020).  Like affirmances of disciplinary hearings, courts in this circuit are also split over "whether a supervisor who reviews and ultimately denies a grievance can be considered personally involved in the unconstitutional act underlying the grievance."  *Corbett v. Annucci*, No. 16-cv-4492 (NSR), 2018 WL 919832, at *7 (S.D.N.Y. Feb. 13, 2018) (quoting *Garcia v. Watts*, No. 08-CV-7778 (JSR), 2009 WL 2777085, at *15 (S.D.N.Y. Sept. 1, 2009)).  Some courts have held that a supervisory official's denial of a grievance is insufficient to establish personal liability, while others have come to the opposite conclusion. *Compare Hidalgo v. Kikendall*, No. 08 Civ. 7536(DC), 2009 WL 2176334, at *4 (S.D.N.Y. July 22, 2009) (finding that "a prison official's 'mere response to a grievance, by itself, is not sufficient to establish personal involvement for purposes of § 1983.'" (quoting *Swindell v. Supple*, No. 02 Civ. 3182 (RWS), 2005 WL 267725, at *11 (S.D.N.Y. Feb. 3, 2005))), *with Atkinson v. Selsky*, No. 03 Civ. 7759(LAK), 2004 WL 2319186, at *1 (S.D.N.Y. Oct. 15, 2004) (finding that "a prison official's denial of a grievance or grievance appeal is sufficient personal involvement to render that official liable under Section 1983").

In an effort to reconcile this divide, some courts have found personal involvement "where the denied grievance alleges 'an ongoing constitutional violation that the supervisory official who reviews the grievance can remedy directly.'"  *Corbett*, 2018 WL 919832, at *7 (quoting *Garcia*, 2009 WL 2777085, at *15); *see also Rahman*, 607 F. Supp. 2d at 585 ("[A] supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it.").  Under this approach, "[r]eceiving post hoc notice does not constitute personal involvement in the unconstitutional activity."  *Rahman*, 607 F. Supp. 2d at 585.  Thus, "[i]f the official is confronted

with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Morgan v. Ward*, No. 1:14-cv-7921-GHW, 2016 WL 427913, at *8 (S.D.N.Y. Feb. 2, 2016) (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008)).

The rationale for this "ongoing violation" approach appears to be threefold.  First, the Second Circuit has acknowledged that "it is questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of." *McKenna*, 386 F.3d at 438 (citing *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002)).  Second, assuming *Colon* survives *Iqbal*, this approach "falls squarely within the second category of personal involvement outlined in *Colon*, which recognizes that a defendant is sufficiently personally involved where, after being informed of the violation through a report or appeal, she fails to remedy the wrong."  *Corbett*, 2018 WL 919832, at *7 (citing *Colon*, 58 F.3d at 873). Finally, as then-District Judge Chin recognized, "Were it otherwise, virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies, and invariably the plaintiff's grievance will have been passed upon by the Superintendent."  *Hidalgo*, 2009 WL 2176334, at *4 (quoting *Thompson v. New York*, No. 99CIV9875(GBD)(MHD), 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001)); *see also Burton v. Lynch*, 664 F. Supp. 2d 349, 361 (S.D.N.Y. 2009) ("Requiring an ongoing constitutional violation which is 'capable of mitigation at the time the supervisory official was apprised thereof,' ensures that a Superintendent is not held liable for every constitutional tort committed by a subordinate solely by virtue of his role as the intermediate appellate level in the inmate grievance process." (quoting *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989))).

The Court finds the ongoing violation approach sound in light of *Iqbal*'s teaching that mere knowledge of a constitutional violation is insufficient to constitute a violation by a supervisor. Applying the ongoing violation approach, the Court concludes that Plaintiff has failed to establish personal involvement by Morton because Plaintiff has not alleged that he suffered from an ongoing constitutional violation that Morton could have remedied.  *See Morgan*, 2016 WL 427913, at *8 (finding no personal involvement by prison wardens who were "confronted with an alleged constitutional violation that had already occurred and was not ongoing"); *Burton*, 664 F. Supp. 2d at 362–63 (finding no personal involvement where plaintiff's "grievance relate[d] only to the alleged beating of [a particular date], and ma[de] no references to any continued threat of injury"); *Vega v. Artus*, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) ("Since Defendant Artus was presented with a grievance in which the alleged misconduct had ceased, Defendant Artus cannot be found to be personally involved for failing to remedy that misconduct."); *Harnett*, 538 F. Supp. 2d at 525 (finding no personal involvement by supervisory official where the "alleged misconduct had already occurred, and plaintiff was not complaining about an 'ongoing' violation").  In this case, Plaintiff alleges that the grievance complained only of the alleged assault that had occurred at Sing Sing CF on August 29, 2018, and not any ongoing constitutional violations.  (*See* TAC ¶¶ 84–85.) Because Plaintiff does not allege continued assaults or other misconduct by correctional officers after the alleged assault, it cannot be said that Morton was personally involved in a constitutional violation.  *See Rahman*, 607 F. Supp. 2d at 585 (finding plaintiff failed to allege personal involvement by supervisory officials because the officials learned "of the assault after it happened" and thus were not "personally involved in any conduct that could be said to have caused the assault").

In any event, just as Morton is entitled to qualified immunity on Plaintiff's claim for the affirmance of his disciplinary hearing, so too is Morton entitled to qualified immunity on Plaintiff's claim for the denial of his grievance.  Given the divide on the issue of denials of grievances noted above, the Court finds that the law in this area is not clearly established or "beyond debate."  *al-Kidd*, 563 U.S. at 741.  The Court therefore cannot conclude that a reasonable official in Morton's position would have been unaware that the denial of Plaintiff's grievance violated existing law at the time of the denial.  *See Whipper v. Erfe*, No. 3:18-cv-00347 (JAM), 2018 WL 5618106, at *6 (D. Conn. Oct. 30, 2018) (concluding that defendants were entitled to qualified immunity "because the law is not clearly established" with respect to denials of grievances (citing *Poe*, 282 F.3d at 134)); *Allah v. Semple*, No. 3:18-cv-00887 (JAM), 2018 WL 3733970, at *7 (D. Conn. Aug. 6, 2018) ("But because at best the law is not clearly established that a supervisory official violates the Constitution by erroneously denying a grievance appeal, I conclude that the supervisory defendants here are entitled to qualified immunity." (citing *Poe*, 282 F.3d at 134)); *Corbett*, 2018 WL 919832, at *8 (finding defendant entitled to qualified immunity "[b]ecause courts in this district are divided regarding whether a supervisor who denies a grievance is personally involved in the underlying constitutional violation [and therefore] Defendant Griffin could reasonably have been unaware that his actions were unlawful").  Accordingly, Plaintiff's claim for the denial of his grievance must be dismissed because Morton is entitled to qualified immunity.

## C. <u>Leave To Amend</u>

The Court denies Plaintiff's request for leave to further amend the Third Amended Complaint.  The Second Circuit has stated, "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)).  Nevertheless, "a district

court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." *Perri v. Bloomberg*, No. 11–CV–2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). In other words, leave to amend may be denied if an amendment would be futile—that is, "a proposed claim could not withstand a motion to dismiss pursuant to 12(b)(6)." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)); *see also Hayden*, 180 F.3d at 53 ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." (citing *Pani*, 152 F.3d at 76)). In addition, a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed" weighs against granting leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

First, the Court has given the Third Amended Complaint a liberal reading and is not convinced a valid claim can be stated against either Capra or Morton. For example, the Court construed the Third Amended Complaint as asserting a deliberate indifference claim against Morton given the factual allegations concerning the denial of Plaintiff's grievance, despite Plaintiff naming Morton only under the due process cause of action. And even under this liberal reading, the Third Amended Complaint does not "suggest[] that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Second, the Court is convinced that a fourth amendment would be futile given (1) Plaintiff's failure to allege any specific facts suggesting personal involvement by Capra and (2) that Morton would likely remain entitled to qualified immunity due to the unsettled state of the

law regarding denials of grievances and affirmances of disciplinary hearings.  *See Yizar v. City of New Rochelle*, No. 17-CV-9771 (VB), 2018 WL 6181364, at *5 (S.D.N.Y. Nov. 26, 2018) ("Here, repleading would be futile because the problems with plaintiff's complaint are substantive.  As discussed above, defendants are entitled to qualified immunity." (citing *Johnson v. Dobry*, 660 F. App'x 69, 71 (2d Cir. 2016) (summary order))); *cf. Rivers v. Fischer*, No. 08 Civ. 8906(DAB), 2009 WL 3169966, at *4 (S.D.N.Y. Sept. 28, 2009) ("Because these officials likewise would be barred from liability in this action by the doctrine of qualified immunity, the Court finds that amending the Complaint to add these Defendants would be futile.").  "The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile."  *Cuoco*, 222 F.3d at 112.

Finally, this is Plaintiff's fourth attempt to plead his case.  Plaintiff has amended his complaint three times, twice substantively, and once in response to a motion to dismiss.  The significant changes between the Third Amended Complaint and the Second Amended Complaint concerning the claims against Capra and Morton demonstrate unquestionably that Plaintiff was put on notice of the deficiencies in the Second Amended Complaint.  Having failed to remedy them in response to Plaintiff's initial motion to dismiss, Plaintiff should not be given "yet another bite at the proverbial apple."  *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) (internal quotation marks and alteration omitted) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."

(citations omitted)).  Accordingly, Plaintiff's request for leave to file a fourth amended complaint is denied.

## CONCLUSION

For the reasons discussed above, the Court GRANTS in its entirety the Motion by Defendants Capra and Morton to dismiss the case as against them.  Plaintiff has failed to plead facts sufficient to establish Defendant Capra's personal involvement in the alleged constitutional violations.  With respect to Defendant Morton, regardless of whether Plaintiff sufficiently has alleged personal involvement, Morton is entitled to qualified immunity.  The Clerk of Court is respectfully requested to terminate the case with respect to Defendants Capra and Morton and close docket entry 74.  The Court DENIES Plaintiff's request to file a fourth amended complaint.

**SO ORDERED.**

**Date:  September 30, 2020**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

28